## Mundy Paving & Construction Co., Appellant, *v.* Delaware County.

226

Argued January 13, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Sadler and Schaffer, JJ.

.

*Geo. V. Strong,* of *Smith & Strong,* for appellant.—A finding of fact will be reversed if there is clear and pre-

ponderating proof to the contrary: Com. v. R. R., 145
Pa. 74; Com. v. R. R., 37 Leg. Int. 407; McConville v.
Ingham, 268 Pa. 507; Bergner v. Bergner, 219 Pa. 113;
Worrall's App., 110 Pa. 349.

When based on erroneous deductions from proven
facts, findings will be corrected on appeal: Crick v.
Paull, 287 Pa. 431; Miller v. Central, etc., Co., 285 Pa.
472; Binswanger v. Hyman, 271 Pa. 296; Com., etc.,
Co. v. Seltzer, 227 Pa. 410.

Defendant took borings to obtain information as to
underground conditions; it then prepared plans show-
ing the information acquired and distributed them to
bidders in order to inform the latter of the character of
the work to be done; the plan should be interpreted in
furtherance of its purpose.

If the contractor was justified in concluding from
the general conditions, specifications and plans that in
excavating for the east abutment only the old east abut-
ment, the caissons and earth would be encountered, the
contract between plaintiff and defendant was based on
an affirmative misrepresentation of a material fact and
plaintiff is entitled to recover its damages: U. S. v. Stage
Co., 199 U. S. 414; Hollerbach v. U. S., 233 U. S. 165;
Christie v. U. S., 237 U. S. 234; U. S. v. Spearin, 248
U. S. 132; U. S. v. Atlantic Dredging Co., 253 U. S. 1;
U. S. v. Smith, 256 U. S. 11.

Appellee is charged with knowledge of the network
or cribbing, logs and piles: Eickenhofer v. Phila., 248
Pa. 365; Rowland v. Phila., 202 Pa. 50; Burger v.
Phila., 196 Pa. 41; Mickey v. Georges Twp., 11 Adv. Pa.
Superior Ct. Unofficial 561; Rapho, etc., Twp. v. Moore,
68 Pa. 404; Coulter v. Twp., 164 Pa. 543; Venango Co.
v. Bridge Co., 215 Pa. 199.

As defendant is charged with knowledge thereof, its
failure to disclose the existence of the log cribbing to
plaintiff renders it liable in damages because (1) such
failure constituted a legal fraud and (2) the plans and
specifications as a whole impliedly represented that they

contained all material facts within defendant's knowledge: Cornelius v. Molloy, 7 Pa. 293; Zahn v. McMillin, 179 Pa. 146; Lancaster Co. Bank v. Albright, 21 Pa. 228; Babcock v. Case, 61 Pa. 427.

As defendant, by not repudiating the agreement of its commissioner, James Hamilton, to pay appellant additionally for excavating the log cribbing, impliedly ratified that agreement, appellant is entitled to recover: Wilson v. McCullough, 23 Pa. 440.

*Albert J. Williams,* for appellee.—The plan did not misrepresent.

Appellee was under no obligation to give information with respect to conditions it knew nothing about, nor is it to be assumed that it intended to do so.

Appellee is not charged with notice of the cribbing of logs and piles: Lohr v. Boro., 156 Pa. 246; Com. v. Brown, 25 Pa. Superior Ct. 269; Venango Co. v. Bridge Co., 215 Pa. 199.

Counsel for appellant contends it is to be presumed that Mr. Hamilton notified the other commissioners and that they ratified. In point of fact, he did not notify them and they did not know of the transaction. Appellant contends it was incumbent on appellee to prove that and that they did not ratify. Just the contrary is true: Twelfth Street Market Co. v. Jackson, 102 Pa. 269; DeForrest v. Townsite Co., 241 Pa. 78.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, February 5, 1930:

This is an action in assumpsit brought by a corporation which contracted with the County of Delaware to build a bridge over a stream of water running through the City of Chester, in accordance with certain plans and specifications. The specifications expressly provided, inter alia, that plaintiff was to "remove the existing substructure" of the old bridge; also, that the work involved should "include the demolition of the existing

substructure......now on the site of the new bridge." In the course of this work, preparatory to excavating for the east abutment of the new bridge, it was discovered that practically the entire area for excavation was occupied by a network of piles, driven to rock bottom, which supported timbers, laid lengthwise and crosswise in two layers, composing a platform, 80 feet by 10 feet, which sustained the east abutment of the old bridge. Plaintiff found that the digging apparatus provided would not move this wooden substructure, and, as a consequence, it had to resort to the slower and more expensive process of hand labor. The present action is to recover the cost of this work and other additional expenses to which plaintiff claims it was put by reason of the obstruction formed by the piling and cribbing.

The claim in suit is based on three main contentions: First, that a boring plan supplied by the county commissioners, at the time contractors' bids were called for, "represented," as plaintiff alleges, that "no obstruction existed between the surface of the ground and the rock elevation, to which [the contractor] was required to excavate," further, that "no material except earth [would be found] between the base of the abutments of the old bridge and the rock elevation, to which excavation was required," and that, since this was not the true state of affairs, the plan in question amounted to a misrepresentation by defendant; second, that the existence of this network of timber was well known to defendant and unknown to plaintiff, and, since the latter could not discover the obstruction by investigation in conformity with the best practice prevailing in the business of construction engineering or by the exercise of reasonable care and diligence, there was a duty of disclosure on the former, which it did not fulfill; third, that, promptly upon discovery of the wooden substructure, which plaintiff alleges constituted a discrepancy between actual conditions and those represented by defendant's boring plan, it verbally notified defendant thereof, through

County Commissioner James M. Hamilton, and the county engineer, S. C. Hollister, and the former, whom plaintiff regarded as defendant's authorized agent, instructed the contractor to proceed with removal of the piling and cribbing, at the same time stating that the additional cost thus entailed would be repaid. Plaintiff alleges it followed this instruction to the amount of damage in suit. The trial court, which, by agreement, heard the case without a jury, resolved all three points against plaintiff and entered judgment for defendant; hence this appeal.

On the first point, the court below found that the plan above mentioned as containing no indication of the wooden substructure, showed six separate borings, all of which were obviously, and admittedly, outside the line of the east abutment of the old bridge. As against the testimony of the president of plaintiff corporation, that he understood this boring plan to be a drawing prepared for the purpose of showing all conditions between the surface of the ground and the underlying rock elevation in the vicinity of the work to be done, the preponderance of expert testimony (proof of this character being used by both sides) was to the effect that the plan evidently was made for the purpose of indicating the rock elevation, and did not pretend to give information concerning the nature of the material in general which the contractor might have to excavate to prepare a place for the new east abutment. The court below found accordingly, and in this we see no error. True, plans submitted by defendant to plaintiff, prior to the making of the contract, indicated that the excavating would require the removal of all old caissons, abutment masonry and earth, but there is nothing on any of these drawings to suggest that they were intended to indicate the entire composition of the old abutment and its supports, which had to be removed by the contractor. So far as the boring plan is concerned, it may be granted that it was intended to show the rock elevation, not only at the

points where the borings, indicated thereon, were made, but throughout the whole area involved; and the court below well states, if one were justified in assuming, as plaintiff did, that this drawing indicated nothing other than soft earth between the ground elevation and rock surface, still he could not claim to have been misled thereby, for the plan in question showed no borings through the substructure of the abutment, and, in point of fact, there was nothing other than soft earth between the ground elevation and rock surface at any of the boring points indicated thereon. In the words of the court below: "The plan of borings at the six points furnishes no valid basis for the assumption that nothing but [soft earth] would be encountered at other places in the vicinity," particularly actually under the bridge abutment. Therefore, even though it be assumed that the plans furnished plaintiff by defendant were intended to indicate, as far as they went, the character of work which plaintiff was to do in the fulfillment of its contract, yet the boring plan, showing conditions as they appeared at the several points where borings were made, cannot justifiably be construed, in accord with plaintiff's contention, as such a representation by defendant concerning subsurface conditions in the vicinity of the bridge,—and, perforce, under the old abutment,—as to charge defendant with misrepresentation. In short, it cannot properly be said that this plan showed or suggested that no obstructions of the character encountered existed in the area to be excavated; the most that it indicated was that there were no such obstructions at the places the borings were made, which, admittedly, were outside the line of the bridge abutment.

To continue our consideration of appellant's first point; it assumes that, since one purpose of the borings was to make available to bidders information from which they might draw a conclusion as to conditions within the circle of the borings, this information was intended, as in Christie v. United States, 237 U. S. 234, 242,

largely depended on by it, to be the *sole* source from which conclusions as to the character of the material for excavation were to be drawn. Obviously, this is not the fact, for a provision in the present contract negatives such an idea and shows a definite intention "to leave the matter [of possible hidden obstacles] open to the independent investigation" of the contractor (see Hollerback v. United States, 233 U. S. 165, 172). The text of the contract provision to which we refer is as follows: "It is understood and agreed that the contractor, before executing the contract, has, by careful examination, satisfied himself as to the nature and location of the work, the conformity of the ground, the character, quality and quantity of the materials to be encountered, the character and equipment and facilities needed preliminary to and during the prosecution of the work, the general and local conditions, and all other matters which can in any way affect the work under contract." While such a provision may be ineffective to relieve one from liability arising out of an act of misrepresentation or deception, either conscious or unconscious, or even out of representations which would justify false and misleading inferences, yet here the court below has found, and warrantably found, that defendant was in no sense guilty of any such act or representation; so the provision cannot be dismissed from consideration, as appellant would have us do. In the federal case relied on by appellant, first above mentioned, there was a definite misrepresentation of fact as to existing conditions, and it was admitted that "time did not permit borings to be made" by the contractors. No such state of affairs appears in the present case. The other authorities relied on by appellant are so plainly distinguishable that they call for no discussion.

On the second proposition urged by plaintiff, it contends, not that the boring and other plans actually furnished false information, rather, that they failed to show all which defendant, under the circumstances of this

case, must be assumed to have known and was obliged to disclose concerning the subsurface conditions; in other words, that the plans in question omitted mention or suggestion of the old piling and cribbing foundation. To charge defendant with knowledge which plaintiff contends one in its position was under legal obligation to impart to a prospective contractor, plaintiff proved that the county installed the piles and cribbing some 25 years back, and had in its possession a plan (discovered subsequent to the making of the contract in suit), which showed such substructure beneath the east abutment of the old bridge. Plaintiff also offered evidence to prove that County Commissioner Hamilton, twenty-five years before, and prior to the time he became a commissioner, had actual knowledge of the existing conditions. These facts, it is contended, fixed defendant with a duty to disclose the existence of the cribbing, and its failure to do so, having misled plaintiff to its financial injury, created a liability on the part of the former to the latter; but we agree with the court below that this contention is untenable.

Appellant proved no willful or intentional concealment by defendant of any fact, nor did it show any affirmative act on defendant's part in connection with which the omission to furnish plaintiff information concerning the obstruction to excavation here encountered would be equivalent to a constructive misrepresentation, deception or legal fraud. In the first place, there is nothing on this record to fix the county with such knowledge of the existence of the obstruction as to create a duty of disclosure. The fact that Hamilton saw the piles and cribbing put in 25 years before, when he was not a county commissioner, is no proof of notice to the county: Lohr v. Phillipsburg Boro., 156 Pa. 246, 248. Again, this is not a negligence case nor subject to the peculiar rules prevailing in such cases, and even though, 25 years ago, defendant installed the piles and cribbing, that is not sufficient to charge the county with knowl-

edge which it was bound to retain and impart to plaintiff prior to the making of the instant contract. Furthermore, the present controversy is not the case of a failure to disclose a material fact of which one contracting party had actual knowledge and the other had not; for, even if Hamilton had knowledge, at the time the cribbing was put in, and that fact could have been taken cognizance of, there was no evidence that, at the date of the contract, he recalled the existence of the cribbing, much less that he informed either of his fellow-commissioners thereof, and it is undisputed that the contracting county commissioners and the acting county engineer did not, until after the contract with plaintiff had been entered into, know of the old plan, showing the piling and cribbing. The law puts no affirmative duty on public officers, such as constantly changing county authorities, to search through old files for plans of existing structures, before contracting for their destruction, in order to furnish prospective contractors precise information concerning the same, and particularly is this true where, as here, the written agreement for such destruction contains a provision requiring the contractor to make his own investigation.

On the third point, plaintiff utterly failed to prove a valid authorization from the county commissioners to pay compensation above the contract price for the removal of the piling and cribbing. If, as alleged, the single county commissioner to whom the matter was communicated, gave verbal orders which warranted plaintiff in assuming that it would be thus paid, such an authorization would be legally insufficient. Section 19 of the Act of 1834, P. L. 537, 541, provides: "Two of the commissioners......shall form a board for the transaction of business, and when convened in pursuance of notice or according to adjournment, shall be competent to perform all and singular the duties appertaining to the office of county commissioners." There is no pretense that these statutory provisions were carried out, as re-

quired by our cases (Pike Co. v. Rowland, 94 Pa. 238, 247-8; Somerset Twp. v. Parson, 105 Pa. 360, 361; Nason v. Directors of the Poor, 126 Pa. 445, 458), and no evidence was offered to show that the county commissioner in question was empowered by his board or any other member thereof to act alone for that body or to give the assurances relied on by plaintiff, nor was ratification established.

Plaintiff, throughout its written argument, refers to the piling and cribbing which it encountered in the course of its work as something separate and distinct from the substructure of the old abutment which it had contracted to remove, and, therefore, as an obstruction that was not properly within the contract terms; but, as contended by appellee, it is questionable whether the difference in material, (that is, the piling and cribbing being made of wood and the rest of the support of concrete,) warrants plaintiff in asserting that the former was not an actual part of the old abutment itself. Whether this be so or not, the piling and cribbing were within the area to be excavated for the abutment of the new bridge and comprised part of the substructure mentioned in the contract; moreover, they were such a part as, under the attending conditions, might naturally be expected. The real trouble seems to be that plaintiff encountered more abutment or substructure, and of a different character, than it had anticipated; it knew, independent of the boring plan, of the presence of the caissons, and assumed that the old abutment and its substructure consisted solely of these and masonry, but, as we have shown, nothing in the plans furnished by defendant would fix it with responsibility for this assumption on the part of plaintiff. The contract covered demolition of the existing substructure, as well as superstructure, on the site of the old bridge, and called for excavations which required the removal of the piling and cribbing; hence, in the absence of deceptive repre-

236

sentations by defendant, the court below correctly decided that "no legal ground exists upon which the plaintiff's claim [for extra payment] can......be sustained." The judgment is affirmed.