The City of Philadelphia to Use *v.* Kauffmann, et al., Appellant.

Argued October 11, 1933.

Before TREXLER, P. J., KEL-
LER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and
JAMES, JJ.

*Maurice A. Granatoor,* for appellant.

*Alphonso Santangelo,* and with him *Hubert J.
Horan, Jr.,* and *Harry M. McCaughey,* for appellee.

OPINION BY CUNNINGHAM, J., March 3, 1934:

On October 2, 1931, Max Kauffmann was the owner
of a lot on the northwest side of Washington Lane,
between Stenton and Mansfield Avenues, in the City of
Philadelphia, and Charles J. Heckler, appellant herein,
was the owner of a first mortgage thereon; the origi-
nal amount of the mortgage was $30,000, but it had
been reduced to $27,500. The City of Philadelphia,
to the use of Union Paving Company, had a municipal
claim, then amounting to $2,356.44, with interest and
costs, for the paving of the cartway in front of the
lot, and on that date filed its claim, under the provi-
sions of the Act of May 16, 1923, P. L. 207, for the
purpose of making it a lien.

On November 4, 1932, appellant presented his peti-
tion to the court below, averring, inter alia, that
Kauffmann had paid the amount of the lien, with the
exception of a balance of $240; that appellant had
tendered to the use-plaintiff that sum, together with
costs of satisfaction, for the purpose of having the
lien satisfied of record, but had been advised by coun-
sel for the use-plaintiff that Mackswell Building and

Loan Association, (the owner of a second mortgage upon the premises in the principal sum of $10,000) had requested an assignment of the full amount of the lien upon the payment by it of the balance of $240; that the association was not entitled to the assignment because payment had been made by Kauffmann; that if the use-plaintiff should be permitted to make the assignment the building and loan association would unjustly and unlawfully acquire a lien preceding the lien of appellant's mortgage; and praying for a rule upon the paving company to show cause why appellant should not be permitted to intervene, why the lien should not be satisfied upon payment of $240, with costs, and why it should not be restrained from making the requested assignment.

To the rule, granted as prayed for, Hubert J. Horan, Jr., Esq., as the vice-president and counsel of the Union Paving Company, filed an answer, denying the averments of payment by Kauffmann and averring that Mackswell Building and Loan Association had agreed "to advance the sum of $2,000, with the understanding that an assignment of said lien was to be made, when the same was paid," to the association.

In support of this averment, a copy of the applicable portion of the minutes of a meeting of the association on October 19, 1931, was attached to the answer. The excerpt follows:

"Application for a loan of two thousand dollars ($2,000) by assignment of a municipal lien on a piece of ground situate on the northwest side of Stenton Avenue and Washington Lane. No prior encumbrance. Applicant and owner—Max Kauffmann. Upon repayment of the said $2,000 to the Mackswell Building and Loan Association, the Mackswell Building and Loan Association agrees to deliver an assignment of the said lien to Isadore E. Kauffmann and Rose H., his wife. Moved, seconded and passed that loan be granted, To be paid in monthly payments of $250 each by the Mackswell Building and Loan Association."

It was then averred that on October 19, and November 16, 1931, and on February 15, March 21, April 18 and May 16, 1932, respectively, a check for $250 was issued by the association to the order of Max Kauffmann, and on January 18th one for $500; that each check bore the notation, "On account paving lien N. W. side Stenton Ave. and Washington Lane"; and that the checks, aggregating $2,000, were indorsed and delivered by Kauffmann to the paving company.

Further averments were that counsel for the paving company had notified counsel for appellant of his intention to assign the claim to the association upon payment of the balance due ($231.26); that this balance was paid; and that the assignment had been made prior to service upon the paving company of the petition and rule.

In March, 1933, appellant obtained a rule upon the association and the paving company to show cause why the assignment of the lien should not be stricken off for the reasons already stated.

After answers, depositions, and argument the court below permitted appellant to intervene but discharged his rules to strike off the assignment and to mark the lien satisfied; hence this appeal.

A reading of the depositions discloses that the material facts were not controverted. Henry A. Kauffmann, a son of the owner of the property and acting for his father, consulted with Mr. Horan's office prior to the filing of the lien, made some payments on account in September, 1931, and entered into an arrangement which he thus described in his testimony: "I paid an additional account—arranged to pay an additional account payment in and then would arrange for a purchaser of the lien, but payments on account being paid by the building and loan association that held the second mortgage."

Max Kauffmann was vice-president of the Mackswell Building and Loan Association and the application for a loan from it was made and granted as set forth

in the minutes above quoted; checks to the amount of $2,000 were issued to Max Kauffmann and, as stated, turned over to the paving company.

On April 21, 1932, Kauffmann said in a letter to Mr. Horan: "According to the contention of the building association who advanced money, upon this payment being made the entire lien is to be assigned to Mackswell Building and Loan Association."

In his reply, under date of April 28, 1932, Mr. Horan, after stating the balance which would be due up to May 16, said: "Upon payment of balance due, I will give you an order to mark the lien to the use of the Building and Loan Association as designated in your letter of April 21, 1932."

On November 4, 1932, Mr. McCaughey, attorney for the building association, gave Mr. Horan his check for the balance due on the lien (for which he was reimbursed by the association) and handed him a copy of the minutes we have quoted.

The day before, Mr. Granatoor, attorney for appellant, had called upon Mr. Horan, made a tender in writing of his check for the balance due, and requested that "the lien and claim ...... should be satisfied of record immediately."

During the early afternoon of November 4th and before service upon him of appellant's rule, Mr. Horan gave Mr. McCaughey the order to mark the lien assigned to the building association.

In the course of his deposition, Mr. Horan, after referring to a conference with his associate, Mr. Corcoran, who had charge of the collection of the lien, said: "He told me of the conversation that he had both over the telephone and the letters in reference to this lien with Mr. Kauffmann; and as a result of that I reached the conclusion that I would not assign that lien to anyone except the Mackswell Building and Loan Association."

Appellant's contention, as we understand it, is that the lien was, in fact, paid by Kauffmann as the owner

of the property and appellant as the owner of a junior encumbrance has a right to take advantage of the payment of this prior encumbrance; and, further, that Kauffmann, the paving company, and the Mackswell Building and Loan Association cannot defeat his right by an attempt to keep alive for their own purposes an encumbrance which has actually been paid. There can be no question about the rule of law upon which appellant relies; the question he must face is whether, under the facts developed upon this record, he has met the burden resting upon him of proving payment by Kauffmann.

Of course, if the real transaction was actual payment by Kauffmann out of his own funds, or with borrowed money, the lien was extinguished and there was nothing to assign.

The question is primarily one of intention. When we endeavor to discover the intent of the parties to the transaction (which appellant attacks as illegal and an infringement upon his rights) from what they said and did, we arrive at a conclusion differing from that urged upon us by appellant.

In the fall of 1931 counsel for the paving company were pressing Kauffmann for payment of their client's claim and on October 2d filed it as a lien against his property.

It is clear from the oral testimony, minutes, and letters to which we have referred, that Kauffmann's son then brought about an arrangement between his father as the owner, the paving company as the lien holder, and the building and loan association already interested as mortgagee in the second mortgage, whereby the association agreed to advance (in monthly payments and in the form of a loan to the owner) sufficient money to pay the lien holder and agreed to take an assignment of the lien as collateral security for the loan, and the lien holder agreed to assign the lien to

the association upon receipt of the amount due upon it.

Manifestly, it was not the intention of any of the parties that the lien, itself, as distinguished from the lien holder, should be paid; it was to be assigned and that was done.

In our opinion, there was nothing illegal about the transaction. In the first place, section 33 of the Act of 1923, supra, thus expressly authorized the assignment. "Any claim filed or to be filed, under the provisions, of this act, and any judgment recovered thereon, may be assigned or transferred to a third party, either absolutely or as collateral security, and such assignee shall have all the rights of the original holder thereof."

In the case of Fair and Square Building and Loan Association v. Presbyterian Board of Publications, etc., 302 Pa. 162, 153 A. 341, our Supreme Court, at page 169, after referring to the rule, invoked by appellant, said: "However, where there is a bona fide money transaction......which action was neither intended as, nor effected, a payment on the principal debt of the mortgage" (the prior encumbrance in that case) and was not in fraud of another's right, the rule has no application.

True, the building association was evidently seeking to protect its own interest by procuring the assignment, but in so doing did not disturb or affect in any way the position or security of appellant; he paid nothing to the lien holder and was in the same position after as before the assignment.

Moreover, we see no reason why, as a general proposition, an owner of encumbered property may not arrange with a junior encumbrancer to advance the money due a senior encumbrancer and thereby be subrogated to the rights of the holder of the senior lien.

One thus acting at the instance of the owner is not a mere volunteer: Haverford L. & B. Assn. v. Fire

Assn., 180 Pa. 522, 37 A. 179; Hopkins Mfg. Co. v. Ketterer, 237 Pa. 285, 290, 85 A. 421.

The quotation in the brief of counsel for appellant from the opinion of the Supreme Court in Erie City v. Piece of Land et al., 308 Pa. 454, 162 A. 445, has no application to the facts here present. In that case the proper officers of the City of Erie accepted, in payment of a municipal lien, a check which subsequently proved to be worthless; the question there considered was whether the city should be compelled to enter satisfaction on the record.

Appellant also cites and relies upon various cases in this and other jurisdictions holding, with respect to tax liens, that one who pays the taxes for the property owner cannot be subrogated by assignment to the special rights and powers of the municipality to which the tax was due. Obviously, the special attributes of a tax claim cease upon its payment to the proper authority and a municipality may not accept payment and at the same time make an assignment of its claim. But the cases cited are not applicable because they relate to general taxes for general governmental purposes and the claim here involved was a special assessment imposed upon property within a limited area for the payment of an improvement thereto by which it was peculiarly benefited: Sewickley Methodist Episcopal Church's Appeal, 165 Pa. 475, 30 A. 1007; Hagemann's Appeal, 88 Pa. 21.

Our conclusion is that the court below did not err in discharging appellant's rules; his assignments of error are therefore dismissed.

Orders affirmed at appellant's costs.